UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-36 |
| v. | Judge Robert W. Gettleman |
| JITESH THAKKAR, | |
| Defendant. | |

## JITESH THAKKAR'S COMBINED MOTIONS *IN LIMINE*

Jitesh Thakkar respectfully moves this Court, *in limine*, to exclude evidence, testimony, and/or arguments as to the following:

(1) References to "market manipulation";

(2) Lay witness opinions that the computer program Sarao used to spoof, or certain functions of the program, could not be used for legitimate trading strategies and/or would only be used for spoofing;

(3) References to the civil action filed by the U.S. Commodity Futures Trading Commission related to the subject matter of this case;

(4) Lay witness testimony characterizing Sarao's trading as "spoofing" or defining "spoofing";

(5) Any witnesses for whom 18 U.S.C. § 3500 material is not timely produced;

(6) Any expert testimony not timely disclosed;

(7) Any witness not previously disclosed; and

(8) Any exhibit not previously identified.

These matters are not relevant to any issue in this case or are otherwise barred by the Federal Rules of Evidence.

**ARGUMENT**

I. **REFERENCES TO MANIPULATION AND MARKET MANIPULATION SHOULD BE EXCLUDED UNDER RULES 401 AND 403**

In order to make the actions of a software company owner who did not engage in any trading appear more egregious to the jury, the government included an irrelevant and unfairly prejudicial "example" of market manipulation in the indictment—a separate crime that Jitesh was not charged with. This portion of the indictment should not be presented to the jury, and the government should be barred from making any other references to "manipulation" and "market manipulation" during trial.[1]

In the indictment, the government defines spoofing and then goes on to describe market manipulation as "one of the many ways spoofing could be used." Indictment ¶ 10. The indictment then gives a detailed explanation of how a trader could use spoof orders to manipulate market prices. *Id.* In addition to presenting this example of market manipulation to the jury in the indictment, the defense expects the government will elicit similar testimony or references to "manipulation" and "market manipulation" during trial. However, market manipulation is a separate and distinct crime. *See* 7 U.S.C. § 13(a)(2). Although the government charged Sarao with manipulation, the same prosecutor *did not* charge Jitesh with market manipulation or allege that Jitesh conspired to engage in market manipulation. For this reason, references to manipulation or market manipulation are as irrelevant and unfairly prejudicial to this case as giving an example of conspiracy to commit a murder as "one of the many ways conspiracy could be used" in an

---

[1] Jitesh previously brought a motion to strike the irrelevant and prejudicial "example" of market manipulation from the indictment. *See* ECF Dkt. No. 31. The Court reserved ruling on the motion to strike. *See* August 22, 2018 Order, ECF Dkt. No. 47. Jitesh renews his request that the Court strike all of paragraph 10 from the indictment except the first sentence, including subsections (a) through (f) in addition to the other relief sought above.

indictment that charges a defendant with conspiracy to commit a different or lesser crime. Accordingly, references to, or examples of, manipulation and market manipulation should be excluded from trial.

Manipulation is a distinct and separate crime that "is specifically forbidden" by the Commodity Exchange Act (the "CEA"). *Strobl v. New York Mercantile Exchange*, 768 F.2d 22, 27 (2d Cir. 1985). Charging the crime of market manipulation requires the government to prove that the defendant had the ability to influence market prices, that artificial prices existed, and that the defendant caused the artificial prices. *In re Dairy Farmers of America, Inc. Cheese Antitrust Litigation*, 801 F.3d 758, 764-65 (7th Cir. 2015). Due to this high burden, the government has never obtained a criminal conviction for market manipulation. In contrast, spoofing requires no proof that the defendant influenced prices at all. The CFTC itself has cautioned that the spoofing statute is a "distinct statutory provision[] from the anti-manipulation provisions" of the CEA, that spoofing does not have "any manipulative intent requirement," and that assigning such a requirement to the spoofing statute "is contrary to the statutory language." 78 Fed. Reg. 31,890, 31,892 (2013). Since Jitesh is not charged with manipulation, any references to, or examples of, manipulation are wholly irrelevant to the elements of the crimes Jitesh has been charged with and should be excluded from trial.

Even if references to, or examples of, manipulation were relevant to the elements of the crimes Jitesh is charged with—which they are not—any such references should still be excluded under Federal Rule of Civil Procedure 403 because the danger of unfair prejudice and confusion from references to manipulation substantially outweighs their probative value. Including "market manipulation" in the indictment or referencing it at trial will unfairly prejudice and confuse the jury into believing that Jitesh conspired with or aided and abetted Sarao to manipulate the

- 3 -

commodities market. Because Jitesh is not charged with market manipulation, references to, or examples of market manipulation have no probative value in this case and should be excluded given the high risk that this evidence will unfairly prejudice or mislead the jury.

## II. LAY WITNESS OPINIONS REGARDING USE OF THE COMPUTER PROGRAM SHOULD BE EXCLUDED UNDER RULE 701

The government should not be permitted to introduce lay opinion testimony that the computer program Sarao used to place spoof orders contained functions that could not be used for legitimate trading strategies and/or contained functions that would only be used to place "spoof" bids or offers. Such opinions—in addition to being incorrect—require scientific, technical, and other specialized knowledge, and thus require expert testimony under Federal Rules of Evidence 701 and 702.

As the Seventh Circuit has explained, "Rule 701 was amended . . . to emphasize that lay opinion testimony is limited to those observations of a lay witness that are 'not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" *United States v. Conn*, 297 F.3d 548, 553 (7th Cir. 2002) (quoting Fed. R. Evid. 701); *see also Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anomina v. Titan Int'l, Inc.,* 533 F.3d 555, 561 (7th Cir. 2008) (same). The advisory committee notes to the amendment explain that the purpose was to prevent parties from "proffering an expert in lay witness clothing":

> Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.... [A] witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701, 2000 advisory committee note.  The Seventh Circuit has emphasized that the amendment that to Rule 701 was specifically designed to make sure that expert testimony is offered only subject to the strict requirements of Rule 702:

> [b]efore the 2000 amendment to Rule 701, some courts had become more lenient in the admission of lay opinion on subjects appropriate for expert testimony. The amendment was designed to make clear that courts must scrutinize witness testimony to ensure that all testimony based on scientific, technical or other specialized knowledge is subjected to the reliability standard of Rule 702.

*Conn*, 297 F.3d at 553 (internal citations omitted).  Thus, a party may not avoid the Rule 702 requirements for expert testimony by offering expert opinions through a lay witnesses.

Lay opinion testimony is based on a witness's firsthand observations that could be interpreted by *any untrained individual* who witnessed the same events.  Testimony that requires specialized knowledge, however, is expert testimony.  This difference between lay opinion testimony and expert testimony has been clearly explained by the Seventh Circuit:

> [l]ay opinion testimony most often takes the form of a summary of first-hand sensory observations. *See Asplundh Mfg. Div. v. Benton Harbor Eng'g,* 57 F.3d 1190, 1196–1202 (3d Cir. 1995).  The opinion provides the jury with a more complete picture than would be provided by a recitation of each component fact. 'Lay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying **and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events**.' *United States v. Peoples,* 250 F.3d 630, 641 (8th Cir. 2001).  Expert opinion, by contrast, need not be based on first-hand knowledge of the facts of the case. It brings to an appraisal of those facts **a scientific, technological or other specialized knowledge that the lay person cannot be expected to possess**.

*Conn*, 297 F.3d at 553 (emphasis added).  In other words, "[l]ay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *Securities & Exch. Comm'n v. Nutmeg Group, LLC*, 2017 WL 1545721, *12 (N.D. Ill. Apr. 28, 2017) (internal quotation marks and citations omitted).

Courts have held that where a witness offers testimony that requires specialized knowledge, such a witness is offering expert testimony. If that witness lacks the qualifications of an expert, his or her testimony is inadmissible. For example, in *Hammond v. System Transport, Inc.*, the Defendant attempted to offer the testimony of a coroner as to the exact timing of the decedent's death. *Hammond*, 2013 WL 5095609, *1 (C.D. Ill. Sept. 12, 2013). The court found that such an opinion "would clearly be based on scientific, technical, or otherwise specialized knowledge" because "[a]n average person could not opine as to the cause of an individual's death without specialized knowledge or training." *Id.* at *3. The Court found that the coroner "d[id] not have the specialized training or education that qualifies him as an expert under the Federal Rules of Evidence to render an opinion as whether Decedents died on impact." *Id.* (excluding the witness's testimony on that point); *see also Haley v. Kolbe & Kolbe Millwork Co.,* 863 F.3d 600, 613-14 (7th Cir. 2017) (holding that emails in which window manufacturer's distributors opined that windows were defective were not admissible as lay opinions but, rather, were inadmissible expert testimony because drawing such a conclusion about defect required specialized knowledge regarding window design); *United States v. Evans*, 892 F. Supp. 2d 949, 954 (N.D. Ill. 2012) (testimony regarding factors that affect a cell phone's ability to connect to a particular tower "cannot be said to be within the perception of the untrained layman" but "demands scientific, technical, or other specialized knowledge" and, thus, requires the witness to be qualified as an expert) (internal quotation marks and citations omitted).

This issue has also been addressed in the specific context of the interpretation of computer programs. In *PCM Leasing, Inc. v. BelGioioso Cheese, Inc.*, the defendant moved to strike an affidavit that contained detailed testimony about the workings of computer software because the witness had not been properly disclosed as an expert. *PCM Leasing, Inc.*, 2018 WL 4538730, *4

(N.D. Ill. Sept. 21, 2018). The court rejected the plaintiff's argument that the testimony was admissible as lay opinion testimony under Rule 701 because a lay person would not have information regarding the details of how a computer software program works. *Id.* at *5 (noting that the testimony did "not result from a process of reasoning familiar in everyday life but results from a process of reasoning which can be mastered only by specialists in the field") (internal citations and quotation marks omitted). *See also Malibu Media LLC v. Doe*, 2016 WL 464045, *10 (N.D. Ill. Feb. 8, 2016) (declarations by witnesses regarding specifics of how software worked were based on "scientific, technical, or other specialized knowledge" and, thus, would require expert testimony and could not be offered as lay opinion testimony).

Similarly, in this case, opinions that certain functions of the computer program Sarao used could not be used for legitimate trading strategies and/or could only be used to place "spoof" bids or offers is not an opinion within the general knowledge of a lay person. An untrained layman could not look at the functions of the program and conclude that those functions could have no legitimate purpose and/or could only be used for spoofing. For example, even if the "back of book" function was explained as moving bids or offers to the back of the line to be traded, an untrained layperson could not determine whether that function could be used in legitimate trading strategies, much less whether that purpose fits the legal definition of spoofing. Rather, such an opinion requires highly specialized knowledge regarding commodities trading, computer programming, and the anti-spoofing statute, which only an expert can provide. *See Tribbles v. Evangelides*, 670 F.3d 753, 758 (7th Cir. 2012). In fact, if expert witnesses were called at trial, we would anticipate significant disagreement on this point among expert witnesses at trial. Therefore, the Court should order that lay witnesses are precluded from offering any opinion at trial that the computer program Sarao used to spoof contained functions that could not be used for

legitimate trading strategies and/or contained functions that could only be used to place spoof bids or offers.

### III. EVIDENCE, TESTIMONY, OR ARGUMENT REGARDING THE CIVIL ACTION FILED BY THE U.S. COMMODITY FUTURES TRADING COMMISSION RELATED TO THE SUBJECT MATTER OF THIS CASE SHOULD BE EXCLUDED

The government should be precluded from referencing or introducing evidence regarding the civil lawsuit that the Commodity Futures Trading Commission ("CFTC") filed against Jitesh and his company nine day after the charges were brought in this case. The CFTC's civil suit constitutes nothing more than unproven allegations and is stayed pending the outcome of this case, making evidence of the civil suit irrelevant and unfairly prejudicial.

First, the civil suit has no relevance to this action. Under Federal Rule of Evidence 401, evidence is relevant only if "it has any tendency to make a fact more or less probable than it would be without the evidence" or "the fact is of consequence in determining the action." Fed. R. Evid. 401. At this point, the only activity in the CFTC suit has been the filing of a complaint and a stay of the case pending the outcome of this case. *See Commodity Futures Trading Commission v. Jitesh Thakkar, et al.*, Case No. 18-cv-619 (N.D. Ill.). No evidence was developed or admitted, no rulings were issued by the court, and certainly no verdict was rendered. Thus, nothing about the filing of the CFTC suit has any tendency to make any fact at issue in this case more or less probable. The mere filing of the civil suit is of no consequence to whether the facts in the indictment are true or false. In fact, in the only other criminal spoofing case that has been tried to date, the Court excluded evidence of civil regulatory investigations, finding them irrelevant to the criminal action pending before it. *See United States v. Coscia*, Case No. 14-CR-551, 2015 WL 6153602, *2 (N.D. Ill. Oct. 19, 2015) ("[B]ecause the Government has not shown how the complaints and follow-up investigations are relevant to Coscia's intent to defraud others or cancel

orders before execution, the Court finds that they . . . should be excluded."). Because evidence of the CFTC action is irrelevant, it should be excluded from trial.

Second, even if it were relevant, evidence regarding the CFTC action should still be excluded because any probative value of such evidence is substantially outweighed by the danger of misleading the jury and unfair prejudice. Fed. R. Evid. 403. Introduction of the civil suit in this case could mislead the jury into believing that the allegations of the indictment are more likely to be true simply because there is a second court action pending against Jitesh. Indeed, the only reason the government might offer such evidence is to invite the jury to improperly infer that the mere fact that a civil suit also has been filed tends to establish the wrongfulness of Jitesh's conduct or the trading activity at issue. That would "unfairly prejudice the jury by giving the appearance that the ultimate issues to be decided by it had already been decided by another entity." *Moore v. Principi*, No. 00-cv-2975, 2002 WL 31767802, at *8 (N.D. Ill. Dec. 10, 2002) (excluding as unfairly prejudicial evidence of an agency's prior investigation); *see also Lewis v. City of Chicago*, 563 F. Supp. 2d 905, 920 (N.D. Ill. 2008). The Court should therefore exclude the irrelevant and unfairly prejudicial evidence regarding the CFTC suit and prohibit the government from making any mention of that action.

### IV. LAY WITNESS TESTIMONY CHARACTERIZING SARAO'S TRADING OR SARAO'S USE OF THE COMPUTER PROGRAM AS "SPOOFING" OR DEFINING "SPOOFING" SHOULD BE PRECLUDED

Lay witnesses should be precluded from characterizing Sarao's trading as "spoofing," characterizing Sarao's use of the computer program he purchased from Edge Financial as "spoofing," or providing definitions of "spoofing." In FBI interview reports, lay witnesses, including Sarao, characterize Sarao's trading activity and his use of the computer program as "spoofing." The defense expects the government will attempt to introduce similar lay witness

characterizations of Sarao's conduct as "spoofing" at trial or provide definitions of "spoofing." Such characterizations are improper lay opinion testimony and must be excluded in Federal Rule of Evidence 701.

Under Rule 701, lay witness opinion testimony must be "helpful to clearly understanding the witness's testimony or to determining a fact in issue" and "not based on scientific, technical, or other specialized knowledge[.]" Fed. R. Evid. 701(b)-(c). Lay witness testimony characterizing Sarao's trading activity and his use of the computer program he purchased from Edge Financial as "spoofing" fails both of these prongs. The Seventh Circuit has "held repeatedly that lay testimony offering a legal conclusion is inadmissible because it is not helpful to the jury, as required by Rule 701(b)." *United States v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009); *see also United States v. Locke*, 643 F.3d 235, 241 (7th Cir. 2011) (noting that a lay witness opinion that "the facts in a case meet the elements of the charged crime will likely constitute unhelpful testimony[.]"). The term "spoofing" has a legal definition that will be given by the Court. The jury is capable of examining the evidence presented at trial, applying the law as instructed by the Court, and "determining whether [the evidence] supports a conviction." *United States v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009). The jury "does not need lay testimony to assist in making that determination." *Id.* Thus, the Seventh Circuit has held that it is erroneous to admit a lay witness's "conclusion regarding the legal implications of his conduct." *United States v. Espino*, 32 F.3d 253, 257 (7th Cir. 1994); *see also Baskes*, 649 F.2d at 478 (affirming district court's exclusion under Rule 701 of lay witness "cross-examination as to the legal implications of what occurred"). As the Seventh Circuit explained in *United States v. Baskes*,

> [w]hen, as here, a witness is asked whether the conduct in issue was 'unlawful' or 'wilful' or whether the defendants 'conspired,' **terms that demand an understanding of the nature and scope of the criminal law, the trial court may properly conclude that any response would not be helpful to the trier of fact.**

*United States v. Baskes*, 649 F.2d 471, 478 (7th Cir. 1980) (emphasis added).

Significantly, in the only other criminal spoofing case that has been tried to date, the Court excluded witness testimony characterizing the defendant's conduct as "spoofing" where the government agreed that the "definition of 'spoofing' is a matter of law for this Court, and the question of whether the defendant engaged in 'spoofing' is a matter for the jury to decide." *See* Government's Response to Coscia's Mot. In Limine, *United States v. Coscia*, Case No. 14-CR-551 (N.D. Ill.), ECF Dkt. Nos. 58, 67.

In addition to being unhelpful to the jury, testimony that specific trades or trading in a certain manner constitutes "spoofing" requires specialized legal knowledge. An average person could not opine that Sarao's trading or the way in which Sarao used the computer program to trade meets the legal definition of spoofing, making such lay witness testimony on this point improper. *See Hammond*, 2013 WL 5095609, *1 (C.D. Ill. Sept. 12, 2013). A layperson "unfamiliar with the contours of the criminal law, may feel that the legal standard is either higher or lower than it really is." *See, e.g., Baskes*, 649 F.2d at 478. This is especially true with regard to whether a trade meets the legal definition of "spoofing," given that regulators and trading industry leaders struggled to understand and define what conduct the new anti-spoofing statute prohibited at the time of the trades identified in the indictment. *See* Memorandum in Support of Thakkar's Motion to Dismiss the Indictment, ECF Dkt. No. 32, pgs. 3-4, 11.

Witness testimony defining "spoofing" is similarly misleading to the jury and must be barred. A lay witness may have an incorrect understanding of the legal definition of spoofing, which could confuse or mislead the jury. *See, e.g., Baskes*, 649 F.2d at 478. "Spoofing" has a legal definition that is set forth in the statute itself, and it is the Court's role to instruct the jury as to the definition of spoofing. Allowing witnesses to provide definitions of spoofing in addition to

the Court's instruction is improper and may confuse or mislead the jury, given that the witness's definition of spoofing may not precisely mirror the Court's definition. Only the Court should define "spoofing" for the jury.

Thus, lay witness testimony characterizing Sarao's trading as "spoofing," characterizing the way in which Sarao used the computer program he purchased from Edge Financial as "spoofing," or offering a definition of "spoofing" is inadmissible lay opinion testimony under Federal Rule of Evidence 701 and must be excluded.

V. **WITNESSES FOR WHOM 18 U.S.C. § 3500 MATERIAL IS NOT TIMELY PRODUCED SHOULD BE BARRED**

The government failed to provide 18 U.S.C. § 3500 ("Jencks Act") material for two witnesses on its witness list, despite a January 1, 2019 deadline to produce all Jencks Act materials. If such material is not timely produced in advance of trial, those witnesses should be barred.

The Court ordered the government to produce all *Brady*, *Giglio*, and Jencks Act material to Jitesh by January 1, 2019. *See* December 18, 2018 Order, ECF Dkt. No. 57. On December 31, 2018, the government sent out a production that included Jencks Act materials for FBI Special Agents Gregory A. LaBerta and Adam Nevens, Lisa Pinheiro, and Daniel Wu. Neither this production, nor the government's previous productions, included any interview reports, transcripts, or other Jencks Act materials for Irene Aldridge, Joel Hasbrouk, Richard Haynes, or Mihran Yenikomshian—all of whom are listed on the government's witness list for trial. Jitesh's counsel sent a letter to the government on February 4, 2019 requesting Jencks Act material for these witnesses.

On February 8, 2019, the government produced FBI interview reports for Joel Hasbrouk and Richard Haynes from interviews conducted on December 7, 2018 and entered on December 12, 2018, nearly three weeks before the government's deadline to produce Jencks Act materials.

The correspondence did not address the lack of Jencks Act material for Irene Aldridge and Mihran Yenikomshian. On February 12, 2019, Jitesh's counsel again asked for any reports or statements from Irene Aldridge or Mihran Yenikomshian. The government responded that "[a]t this time, we do not possess any such reports or transcripts for these witnesses, but will produce such additional reports or transcripts if and when we come into possession of them as we continue to prepare for trial."

The Court ordered production of *Brady*, *Giglio*, and Jencks Act material 90 days before trial to give Jitesh sufficient time to prepare his defense in this case. To comply with the purpose of the Court's order, the government should interview these witnesses[2] and turn over all interview reports or transcripts immediately. If the government does not produce interview reports or transcripts for Irene Aldridge or Mihran Yenikomshian by the pretrial conference date on March 13, 2019, Jitesh requests that the Court bar these witnesses from testifying at trial.

### VI. EXPERT TESTIMONY NOT TIMELY DISCLOSED SHOULD BE BARRED

Testimony from any expert witness that is not timely disclosed should be barred. The Court ordered the parties to exchange expert disclosures by February 22, 2019. *See* December 18, 2018 Order, ECF Dkt. No. 57. As of the time of filing this motion, the defense has not received any expert disclosures from the government. To the extent the government discloses any expert witnesses or testimony after today's deadline, those witnesses should be barred from trial. *See NutraSweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 785 (7th Cir. 2000) ("if a party does not timely file his reports, the district court may exclude the party's expert from testifying at trial on the matters the party was required to disclose.").

---

[2] The defense assumes that the government has not interviewed these witnesses given that the government claims it does not have interview reports or transcripts for these witnesses.

## VII. WITNESSES NOT PREVIOUSLY DISCLOSED SHOULD BE BARRED

Testimony from any witness who was not previously disclosed should be barred. The Court ordered the parties to each provide the Court with a list of trial witnesses by December 7, 2018. *See* August 22, 2018 Order, ECF Dkt. No. 47. The government filed its witness list on December 7, 2018. ECF Dkt. No. 50. The government has not notified Defendant of an intent to call any additional witnesses since it was filed and has not otherwise supplemented its witnesses list. Therefore, all witnesses not listed on the government's December 7, 2018 witness list should be barred.

## VIII. EXHIBITS NOT PREVIOUSLY IDENTIFIED SHOULD BE PRECLUDED

Exhibits not previously identified should be precluded. The Court ordered the parties to provide the Court with a list of trial exhibits by December 7, 2018. *See* August 22, 2018 Order, ECF Dkt. No. 47. The government filed its exhibit list on December 7, 2018. ECF Dkt. No. 52. The government has not notified Defendant of an intent to add exhibits to its exhibit list and has not otherwise supplemented its exhibit list since it was filed. Therefore, all exhibits not listed on the government's December 7, 2018 exhibit list should be precluded.

Dated: February 22, 2019

Respectfully submitted,

By: /s/ *Renato Mariotti*
Renato Mariotti
Holly H. Campbell
THOMPSON COBURN LLP
55 East Monroe St., 37th Floor
Chicago, Illinois 60603
(312) 346-7500
rmariotti@thompsoncoburn.com
hcampbell@thompsoncoburn.com

*Attorneys for Jitesh Thakkar*

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2019, the foregoing was filed electronically with the Clerk of the Court to be served upon all attorneys of record by operation of the Court's electronic filing system.

/s/ *Renato Mariotti*