UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>JITESH THAKKAR,<br><br>          Defendant. | Case No. 18-CR-36<br><br>Judge Robert W. Gettleman |

**JITESH THAKKAR'S MOTION *IN LIMINE* TO PRECLUDE
LAY OPINION TESTIMONY FROM NAVINDER SARAO**

Jitesh Thakkar respectfully moves this Court for entry of an order precluding the government from introducing lay opinion testimony from Navinder Sarao that Jitesh knew spoofing was illegal or that Jitesh knew Sarao would use a computer program that Edge Financial developed to engage in spoofing years later. In support thereof, Jitesh states as follows:

**INTRODUCTION**

Jitesh Thakkar, the owner of a small software company in Chicago, is charged with spoofing and conspiracy to commit spoofing for trades made by London-based trader Navinder Sarao using the company's software years later. It is undisputed that Jitesh did not personally make any trades during the relevant time period. In order to prove their case, the government must prove beyond a reasonable doubt that Jitesh *knowingly* became a member of a conspiracy to commit spoofing with the intent to further the conspiracy or that he *knowingly* aided or abetted Sarao's spoofing.

The typical evidence of a defendant's knowledge is missing in this case. Sarao will not testify that he discussed spoofing with Jitesh or ever told Jitesh what he was going to do with the computer program the company created. Sarao admitted to the FBI that he *never* used the words

"spoof" or "spoofing" with Jitesh, he did not tell Jitesh that he planned to spoof, that he *never* explained to Jitesh what he was going to do with the computer program, that he did not explicitly tell Jitesh why he did not want to get hit on certain orders or in what context he did not want to get hit on certain orders, and that he definitely did not tell Jitesh what kind of trader he was or the details of his trading strategy.

The government instead seeks to prove that Jitesh conspired with Sarao and knew about his plan to spoof the market based on vague opinions asserted by Sarao with little or no basis. For example, Sarao told the FBI that Jitesh "seemed to understand Sarao's objective," "seemed to understand what Sarao wanted to do with his [back of book] orders," and knew spoofing was illegal. Even these vague opinions were not based on Sarao's first-hand observations of Jitesh's demeanor, tone, or mannerisms. In fact, during Sarao's first two interviews with the government, he offered *no basis whatsoever* for these opinions. In his last interview with the government, 15 days before the complaint was filed in this case, Sarao supposedly stated that the basis for his opinions was the various documents that the government collected to draft its complaint against Jitesh more than six years after Sarao contacted Jitesh to develop his program. Even if this assertion can be credited, his opinions on the ultimate question before the jury—whether Jitesh knew that Sarao would use the software to commit a crime—are not based on what he saw or heard at the time but are instead based on documents the jury can review, weigh, and reach a conclusion about on its own. Such testimony is improper under Federal Rule of Evidence 701 and should be excluded.

**FACTUAL BACKGROUND**

I. <u>Sarao Provides No Basis for his Opinions on Jitesh's Knowledge During his Initial Interviews with the Government</u>

After Sarao entered into a plea agreement and agreed to cooperate with the government, the government interviewed Sarao on at least seven separate days. The FBI, DOJ, and the Commodity Futures Trading Commission ("CFTC") participated in these interviews. During Sarao's first interviews on November 8th and 9th, 2016, Sarao told investigators that Jitesh's company programmed certain functions for him, including a "back of book" function, and that the back of book function that Jitesh's company programmed did not work as Sarao intended. *See* FBI Report of Interview with Navinder Sarao entered December 12, 2016, pg. 8, attached hereto as <u>Exhibit A</u>. According to this interview report, Sarao provided *no other* information about Jitesh during this interview. In this interview, Sarao did not opine that Jitesh knew or understood that Sarao would use the program to engage in spoofing or knew spoofing was illegal.

In fact, Sarao's statement that the back of book function Edge programmed did not work as Sarao intended suggests that Jitesh *did not* understand how Sarao wanted to use this program. The "back of book" function, as described by the government in the indictment, moved certain bids or offers to the back of the commodity exchange's order book under certain circumstances. The government claims that this function makes it less likely that an order will be filled, and equates that reduced likelihood to an intent to cancel the order before execution. The government's entire case rests on proving that Jitesh knew Sarao would use this "back of book" function to place orders he intended to cancel before execution. Thus, what Jitesh understood about this "back of book" function and how Sarao would use it is critical to the government's case, and Sarao offered *no* opinions on this topic during his first two-day interview. The only statements Sarao did make about the back of book function suggested that Jitesh did not understand how Sarao would use it.

The government interviewed Sarao again on February 1st, 2nd, and 3rd, 2017. *See* FBI Report of Interview with Navinder Sarao, entered March 21, 2017, attached hereto as Exhibit B. During these interviews, Sarao stated that he "did not use the word 'spoof'" with Jitesh. Sarao speculated that "*if* Thakkar understood trading, then he knew back of the book meant Sarao did not want to get hit on those orders." Ex. B, pg. 5 (emphasis added). Sarao then claimed he had "no doubt" that Jitesh understood Sarao's goal for the back of book function was to not get hit on those orders, but does not provide a specific basis for this opinion. *Id.* Sarao provided *no* specific personal observations, perceptions, or other independent basis for his opinion that Jitesh "knew back of the book meant Sarao did not want to get hit on those orders" during this interview. Sarao did reiterate this opinion when the government directed his attention to a line in a consulting agreement that discussed Sarao not wanting to be hit on certain orders, but Sarao did not provide any specific basis for this opinion from his own personal observations or interactions with Jitesh.

Finally, the reports from these initial interviews do not reflect that Sarao ever discussed his intent to use the program for spoofing with Jitesh nor did Sarao speculate that he believes Jitesh knew Sarao would use the program Edge created to engage in spoofing.

II. <u>Sarao Speculates that Jitesh Knew Sarao's Goal for Back of Book Orders was to Spoof the Market only after a Cumulative Review of Documents Cited in the Government's Complaint against Jitesh</u>

The government interviewed Sarao a final time just days before it filed its criminal complaint against Jitesh. Prior to that interview, Sarao had never opined that Jitesh knew or understood Sarao would use the program Edge created to engage in spoofing and had never provided *any* specific basis for his opinion that Jitesh understood Sarao's goal for the back of book function was to not get hit on those orders. Nonetheless, Sarao supposedly offered new lay opinions when the government interviewed Sarao on January 3rd and 4th, 2018—15 days before

filing its criminal complaint against Jitesh. *See* FBI Interview Report of Navinder Sarao, entered February 8, 2018, attached hereto as <u>Exhibit C</u>. Although Sarao reiterated in this interview that he did not use the word "spoofing" in emails or calls with Jitesh and stated that he "*did not* explain to Thakkar what he was going to do with the program," Sarao speculated in this interview—for the first time—that he believes Jitesh understood that Sarao's goal was to use the back of book function to spoof the market. *See* <u>Ex. C</u>, pgs. 4, 6, 20 (emphasis added). The interview report identifies the "signals" that led Sarao to this conclusion as:

> the parenthetical in the Consulting Agreement in which Thakkar said he [Sarao] does not want to get hit on his orders; Thakkar's first email to Sarao which stated Edge specialized in programming what Sarao requested and Edge could complete the project quickly; Thakkar had more knowledge about trading and the markets than a regular programmer; Thakkar saw the value in the software and wanted to own the rights to the software so he could resell it; Thakkar sent an email to Sarao stating he was on a CFTC subcommittee for high frequency trading; and Thakkar introduced Sarao to [broker] GHF.

*Id.* These "signals" are the same documents and statements that the government identified in the criminal complaint filed against Jitesh days later. No one could seriously believe that Sarao collected these documents and statements himself. Sarao's opinion that Jitesh knew Sarao's goal was to use the back of the book function to spoof the market appears to arise from Sarao's cumulative review of evidence the government collected in this case, not on Sarao's personal observations or perceptions of Jitesh.

Also, after being shown an email in this interview from Jitesh stating that he had been selected to serve on a CFTC subcommittee, Sarao also said that this email "suggested" that Jitesh knew Sarao was spoofing and knew it was illegal at that time. *Id.* at pg. 21.

III. The Government Confirms Sarao has No Further Information Beyond What is Contained in his Interview Reports

After reviewing the evidence produced by the government, including Sarao's interview reports, and discussing the allegations with Jitesh, Jitesh's counsel flew to Washington D.C. to meet with government counsel. During this meeting, Jitesh's counsel informed the government that he believes Jitesh is actually innocent and asked if there were additional statements by Sarao or any other evidence implicating Jitesh that he was missing. The government indicated that they had no additional information regarding statements from Sarao to provide beyond what was discussed in his interview reports and that the reports spoke for themselves. The government did not produce any additional materials related to Sarao on the Court's January 1, 2019 deadline to produce all *Brady*, *Giglio*, and Jencks Act material, thus confirming there are no additional statements from Sarao beyond these interview reports. *See* August 8, 2018 Order, ECF Dkt. No. 47.

## ARGUMENT

Sarao's lay opinions that Jitesh knew spoofing was illegal and that Jitesh knew that Sarao would use the program Edge created to spoof are inadmissible under Federal Rule of Evidence 701. These opinions are not rationally based on Sarao's perceptions, and are not helpful to the jury because they are opinions on the ultimate issue in this case based solely on evidence that the jury can review, weigh, and reach a conclusion about on its own. Thus, they must be excluded.

Under Rule 701, lay witnesses may only provide opinion testimony that is:

(a) rationally based on the witness's perception;
(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

I. <u>Sarao's Opinion on Jitesh's Knowledge is Inadmissible under Rule 701(a) because it is Not Rationally Based on Sarao's Personal Observations or Perceptions</u>

Sarao's opinions that Jitesh knew spoofing was illegal and understood that Sarao would use the computer program for spoofing are inadmissible lay opinions because they are not rationally based on Sarao's personal observations or perceptions. *See* Fed. R. Evid. 701(a). The requirement in Rule 701(a) that a lay opinion must be rationally based on a witness's perception "is the familiar requirement of first-hand knowledge or observation." Fed. R. Evid. 701 Advisory Committee's Note.

First, Sarao cannot properly testify that Jitesh knew spoofing was illegal because Sarao has absolutely no first-hand knowledge of what Jitesh knew about spoofing. As the Seventh Circuit noted in *United States v. Hauert*, "opinion testimony on a party's knowledge of the law 'in most instances . . . will not meet the requirements of Rule 701.'" *Hauert*, 40 F.3d 197, 201 (7th Cir. 1994) (quoting *United States v. Rea,* 958 F.2d 1206, 1216 (2d Cir. 1992)). Sarao's opinion that Jitesh knew spoofing was illegal is based solely on Sarao's review in 2018 of an email that Jitesh sent in 2012 stating that he had been selected to serve on a CFTC subcommittee on high frequency trading. Ex. C, pgs. 20-21. On its own, this email does not lead to a conclusion that Jitesh knew what spoofing was or that it was illegal. Further, Sarao stated that he "forgot about the email after he read it," suggesting that he never discussed it with Jitesh. *Id.* at pg. 20. Sarao also stated that he *never* used the word "spoof" or "spoofing" when speaking with Jitesh. Since Sarao never personally discussed spoofing with Jitesh, and formed this opinion solely on his review of an email that doesn't even reference spoofing six years later, Sarao must be precluded from testifying that Jitesh knew spoofing was illegal at the time because this lay opinion is not rationally based on Sarao's own perceptions of Jitesh.

Sarao should also be precluded from offering a lay opinion that Jitesh knew or understood that Sarao would use the computer program for spoofing. First, it is improper for Sarao to offer a lay opinion that the way he traded using this program constituted spoofing. The Seventh Circuit has held that it is erroneous to admit a lay witness's "conclusion regarding the legal implications of his conduct." *United States v. Espino*, 32 F.3d 253, 257 (7th Cir. 1994); *see also United States v. Baskes*, 649 F.2d 471, 478 (7th Cir. 1980) (affirming district court's exclusion under Rule 701 of lay witness "cross-examination as to the legal implications of what occurred"). Sarao is not an expert on the law, and his lay opinion on what conduct meets the legal definition of spoofing may be incorrect. *See, e.g., Baskes*, 649 F.2d at 478 ("The witness, unfamiliar with the contours of the criminal law, may feel that the legal standard is either higher or lower than it really is."). It is the jury's job, not Sarao's, to apply the law as instructed by the Court to the facts of this case to determine if certain trades constitute spoofing. Thus, Sarao should be barred from offering lay opinion testimony that any of his trades using the computer program constituted spoofing.

In addition to having no basis or expertise to define his trading using this program as spoofing, Sarao's lay opinion that Jitesh *knew or understood* that Sarao would use the computer program for spoofing is also inadmissible because it is not based upon Sarao's first-hand knowledge or personal observations. Sarao stated in interview reports that he never discussed spoofing with Jitesh, that he did not tell Jitesh he planned to spoof, that he did not explicitly tell Jitesh why he did not want to get hit on certain orders, and that he definitely did not tell Jitesh what kind of trader he was. In his initial interviews, Sarao did not even offer an opinion that Jitesh knew Sarao would use the computer program to engage in spoofing.

It wasn't until his final interview, conducted days before the government filed its criminal complaint against Jitesh—and nearly five years after Sarao's spoof trades identified in the

indictment took place—that Sarao developed his opinion that Jitesh "seemed to understand" that Sarao wanted to use functions of the computer program to spoof the market. Ex. C, pg. 20. The "signals" that led Sarao to develop this opinion five years after Sarao's spoof trades identified in the indictment and more than six years after Sarao discussed his requirements for the program with Jitesh were not based on Sarao's contemporaneous personal observations from interacting with Jitesh. Instead, Sarao based this opinion on a cumulative review of disparate evidence the government collected to draft its complaint against Jitesh, including a line in a consulting agreement, the email Jitesh sent stating he was selected for the CFTC subcommittee, and an email from Jitesh that Edge specialized in programming what Sarao requested. Id.

Sarao does not indicate that he held this opinion when he first saw these documents or during his personal interactions with Jitesh. This opinion is not based upon his first-hand observations of Jitesh's mannerisms or demeanor at the time. It is a broad conclusion regarding the ultimate question at trial deduced from disparate documents and statements collected by the government. Drawing that conclusion is appropriate for a jury, but not for a witness under the guise of lay opinion.

Accordingly, Sarao's lay opinions that Jitesh knew spoofing was illegal and that Jitesh knew or understood that Sarao would use the computer program for spoofing are not based upon Sarao's personal observations from interacting with Jitesh and must be excluded under Rule 701(a).

II. Sarao's Lay Opinions are Inadmissible under Rule 701(b) because they are Opinions on the Ultimate Conclusion of the Case, Based only on Evidence that the Jury can Review, Weigh, and Reach a Conclusion about on its Own

Sarao's opinions that Jitesh knew spoofing was illegal and that Jitesh knew or understood that Sarao would use the computer program for spoofing are based solely on evidence collected

by the government for its complaint against Jitesh, not on his first-hand observations while interacting with Jitesh. Because the jury is in as good of a position as Sarao to draw a conclusion from this evidence, Sarao's opinions are not helpful to the jury in determining a fact in issue and is properly excluded under Rule 702(b). *See* Fed. R. Evid. 701(b).

"Rule 701(b) assures against the admission of opinions which would merely tell the jury what result to reach." *United States v. Wantuch*, 525 F.3d 505, 513 (7th Cir. 2008); *see also United States v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009) ("a lay witness's purpose is to inform the jury what is in the evidence, not to tell it what inferences to draw from that evidence"). Courts have held that,

> [w]here a witness has described what a defendant was in a position to observe, what the defendant was told, and what the defendant said or did, the witness's opinion as to the defendant's knowledge will often not be 'helpful' within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant knew.

*United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992); *see also Nichols v. Johnson*, No. 00 C 7785, 2002 WL 826482, at *5 (N.D. Ill. May 1, 2002) ("To allow someone offered as a lay witness to express an opinion based on the same evidence that the jury has before it would not assist the jury") (barring witness's testimony for failing to meet the requirements of Rule 701).

Here, Sarao's opinions that Jitesh knew spoofing was illegal and that Jitesh knew or understood that Sarao would use the computer program for spoofing are even less helpful for the jury because they are not based on Sarao's personal knowledge of what Jitesh observed, what Jitesh was told, or what Jitesh said to Sarao. These opinions on the ultimate issue in this case—whether Jitesh knew Sarao would use the program to commit a crime—are based solely on Sarao's review of disparate pieces of evidence collected by the government to draft its complaint against Jitesh. The jury is just as capable as Sarao of reviewing all of the evidence in this case and

determining what Jitesh knew based on this evidence collected by the government (if not more capable, because the jury will have access to more evidence than Sarao as well as the benefit of testimony to explain this evidence). *See Wantuch*, 525 F.3d at 515 (finding that "the jury was just as capable as [the witness] of inferring that [the defendant] knew he was committing a crime[.]"). The government should not be allowed to present their closing argument to the jury under the guise of opinion testimony from Sarao. The jurors, not Sarao, are the proper people to analyze the evidence in this case and conclude whether or not Jitesh knew Sarao would use this computer program to spoof. Thus Sarao's lay opinions that Jitesh knew spoofing was illegal and that Jitesh knew or understood that Sarao would use the computer program for spoofing should be excluded under Rule 701(b).

III. Alternatively, Sarao's Opinion Testimony Should be Excluded because its Probative Value is Substantially Outweighed by a Danger of Unfair Prejudice and Misleading the Jury

Even if the Court declines to exclude Sarao's lay opinion testimony under Federal Rule of Evidence 701, this evidence should be excluded under Federal Rule of Evidence 403 because its probative value is substantiality outweighed by a danger of unfair prejudice and a danger of misleading the jury. Fed. R. Evid. 403; *see also Wantuch*, 525 F.3d at 515 (noting that "lay opinions may be excluded [under Rule 403] if the opinion would be a waste of time or its probative value is substantially outweighed by its prejudicial nature").

As discussed above, Sarao's lay opinions that Jitesh knew spoofing was illegal and that Jitesh knew or understood that Sarao would use the computer program to spoof are conclusions Sarao reached after reviewing documents collected by the government five years after the spoof trades identified in the indictment. Allowing this testimony at trial may mislead the jury into concluding that Sarao formed these opinions contemporaneously while interacting with Jitesh in 2011 and 2012, which is not the case. The jury may also incorrectly conclude that Sarao formed

these opinions independently, when in reality Sarao only speculated about Jitesh's knowledge of spoofing in his final interview with the government after reviewing documents and evidence the government collected and showed him. Sarao did not independently offer these opinions in his initial interviews with the government, but allowing this testimony at trial may mislead the jury into thinking as much. In addition, the jury may incorrectly infer that Sarao reached these conclusions based upon his personal knowledge or first-hand contemporaneous observations, which he did not do.

Further, this opinion testimony carries a danger of unfair prejudice because it amounts to a witness offering an opinion on the ultimate issue in the case that is not derived from his personal knowledge or perceptions. Such testimony is unfairly prejudicial because it invites the jury to adopt Sarao's conclusions even though his opinions are not based on Sarao's personal knowledge or perceptions but rather his review of documents years after the fact—documents the jury will have the opportunity to review themselves.

The potential for Sarao's opinion testimony to mislead the jury and cause unfair prejudice substantially outweighs any prohibitive value of this evidence because, as discussed above, the jury is just as capable of reviewing the evidence upon which Sarao bases his opinions and reaching a conclusion as to whether or not Jitesh knew spoofing was illegal or knew Sarao would use this computer program to spoof. Therefore, Sarao's lay opinions that Jitesh knew spoofing was illegal or that Jitesh knew Sarao would use the program Edge created to spoof should be excluded from trial.

## CONCLUSION

For these reasons, Defendant Jitesh Thakkar respectfully requests that this Court grant his motion *in limine*, preclude the government from introducing lay opinion testimony from Navinder

Sarao as to whether Jitesh knew spoofing was illegal or whether Jitesh knew Sarao would use the computer program to engage in spoofing, and grant such other and further relief as this Court deems appropriate.

Dated: February 22, 2019

Respectfully submitted,

By: /s/ *Renato Mariotti*
Renato Mariotti
Holly H. Campbell
THOMPSON COBURN LLP
55 East Monroe St., 37th Floor
Chicago, Illinois 60603
(312) 346-7500
rmariotti@thompsoncoburn.com
hcampbell@thompsoncoburn.com

*Attorneys for Jitesh Thakkar*

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2019, the foregoing was filed electronically with the Clerk of the Court to be served upon all attorneys of record by operation of the Court's electronic filing system.

/s/ *Renato Mariotti*