**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JITESH THAKKAR,<br><br>Defendant. | Case No. 18-CR-36<br><br>Judge Robert W. Gettleman |

**JITESH THAKKAR'S RENEWED MOTION TO DISMISS THE INDICTMENT OR, IN THE ALTERNATIVE, TO STRIKE PREJUDICIAL LANGUAGE FROM THE INDICTMENT**

Jitesh Thakkar hereby renews his Motion to Dismiss the Indictment or, in the Alternative, to Strike Prejudicial Language from the Indictment. In support thereof, Jitesh states as follows:

## INTRODUCTION

In order to make the actions of a software company owner who did not engage in any trading appear more egregious, the government presented irrelevant and prejudicial testimony to the grand jury on market manipulation—a totally separate crime that Jitesh was not charged with. Until recently, we could not be sure that the government did so. In fact, when we raised the possibility that the government presented this prejudicial testimony on market manipulation to the grand jury in our motion for *in camera* review of the grand jury transcript, the government opposed the motion. The government told the Court that Jitesh's concerns were "mere speculation," "pure speculation," an "unsupported claim," and that any discussion of market manipulation was a "passing reference."

The government's statements to the Court were clearly not accurate, based upon the grand jury transcript, which we received this month. That transcript makes clear that the government did

exactly what Jitesh feared—presented extensive and misleading testimony on the separate crime of market manipulation to the grand jury, a crime Jitesh was not charged with.

The transcript also reveals that the government sidestepped its burden of proving that Jitesh knowingly conspired with Navinder Sarao. Instead of merely presenting the challenging—and inadequate—evidence of "knowledge" that it actually has, the prosecutor elicited supposed fact testimony from the case agent that Jitesh conspired with Sarao. Presenting this legal conclusion to the grand jury under the guise of fact testimony was wholly improper and meant that the grand jury never had to grapple with the tough question in this case of whether Jitesh knowingly agreed with Sarao to commit a crime. Further, the government presented no evidence to support an indictment on the substantive spoofing counts in the indictment under *either* an aiding and abetting theory or a *Pinkerton* theory. These deficiencies create grave doubt that the grand jury's decision to indict was not based on misleading and prejudicial testimony and require that the indictment must be dismissed.

If this Court does not agree that the indictment should be dismissed, Jitesh renews his request to strike the inflammatory and prejudicial example of market manipulation from the indictment.

## BACKGROUND

### I. Jitesh Asks the Court to Review the Grand Jury Transcript *in Camera* to Ensure that the Government did not Present Misleading Evidence of a Separate Crime Jitesh was not Charged With

On May 29, 2018, Jitesh filed a motion asking the Court to dismiss the indictment or, in the alternative, to undertake an *in camera* review of the grand jury transcript and strike prejudicial language from the indictment. ECF Dkt. Nos. 31-21. Jitesh filed that motion, in part, because the government included an inflammatory and prejudicial "example" of market manipulation in the

indictment—a totally separate crime that Jitesh was not charged with. Market manipulation is a separate and distinct crime from spoofing that requires the government to meet a higher burden and prove that the defendant had the ability to influence market prices, that artificial prices existed, and that the defendant caused the artificial prices. *See* 7 U.S.C. § 13(a)(2). By contrast, spoofing requires no proof that the defendant influenced prices at all. In this case, there are no allegations that Jitesh conspired with or aided and abetted Sarao in manipulating market prices. Because the government included a lengthy description of the separate crime of market manipulation in the indictment despite the fact that Jitesh was not charged with this crime, Jitesh asked the Court to review the grand jury transcript *in camera* to ensure that the government did not use this misleading "example" with the grand jury in order to obtain an indictment.

In response to Jitesh's motion, the government repeatedly dismissed the concerns Jitesh raised as "mere speculation," "pure speculation," and an "unsupported claim." ECF Dkt. No. 40, pg. 22-24. The government argued that the "mere 'conceivable' possibility" that it presented this example of market manipulation to the grand jury was insufficient to allow the Court to review the transcript *in camera*. *Id.* at 24. The government told this Court that,

> [t]he defendant's argument has no merit because a *passing reference* to market manipulation in a general description of spoofing simply provided context and background for the spoofing allegations in this case. It *did not suggest* that the defendant engaged in other crimes not included in the Indictment.

*Id.* (emphasis added). As a result of the government's representations, the Court denied the motion for *in camera* review of the grand jury transcript, but reserved ruling on Jitesh's request to strike the prejudicial language from the indictment for trial. Aug. 22, 2018 Order, ECF Dkt. No. 47.

## II. Jitesh Receives the Grand Jury Transcript, which Revealed the Government's Witness Discussed the Crime of Market Manipulation Extensively

When Jitesh received the grand jury transcript, more than two months after the Court ordered the government to produce it, it became clear that the government did exactly what Jitesh expected—the government's witness provided an extensive explanation of the crime of market manipulation to the grand jury.

This Court ordered the government to turn over all *Brady*, *Giglio*, Rule 404(b), and Jencks Act material to the defense by January 1, 2019. Aug. 22, 2018 Order, ECF Dkt. No. 47. On December 31, 2018, the government produced certain Jencks Act material for FBI agents assigned to the case, along with other documents. After reviewing the government's production, Jitesh's counsel discovered that the government failed to disclose *any* statements that its witnesses made to the grand jury, which would constitute Jencks material. On March 6, 2019, Jitesh's counsel asked the government to produce these missing grand jury transcripts. On March 7, 2019, Jitesh's counsel received the transcript of the case agent's testimony to the grand jury.[1] When Jitesh's counsel reviewed this transcript while preparing for trial, the transcript confirmed exactly what Jitesh expected—and what the government dismissed as "pure speculation"—that the government presented extensive evidence of the separate crime of market manipulation to the grand jury.

Specifically, the case agent provided the following testimony:

- Spoofing is a form of market manipulation. Grand Jury Transcript, 21:6-8.[2]
- Spoofing can be used to manipulate the market for futures contracts. *Id*. at 21:18-20.

---

[1] Jitesh received this late transcript after the February 22, 2019 deadline to file motions *in limine*, so he could not address this issue when he renewed his motion to strike the prejudicial language from the indictment in his motions *in limine*.

[2] A copy of the grand jury transcript will be provided to chambers.

- Traders would place spoof orders to drive prices up by creating a false impression in the market of increased demand, and that would likely drive the price of the market up. *Id.* at 23:4-12.
- Traders would also place spoof orders to drive prices down by creating a false impression in the market of increased supply. *Id.* 23:13-17.
- By placing spoof orders, a trader intends to inject false and misleading information into the market to create this false impression of increased supply or demand. *Id.* at 24:7-12.
- Market participants react to a false impression created by the spoof order, often by buying and selling at quantities and prices at times they otherwise would not have. *Id.* 24:13-22.
- Market participants buy and sell at these times because they see an artificial supply or demand created by spoof orders and this ***often causes the market price of a given future contract to rise or fall***. *Id.* at 24:23-25:8 (emphasis added).
- Market prices change as a result of the spoof order, often allowing the trader to fill his primary order on the opposite side at quantities, prices and times that otherwise wouldn't have been available but for the spoof order. *Id.* at 25:9-16.
- "[T]he spoof order is placed to move the market[.]" *Id.* at 25:17-21.

The case agent also described a particular scheme of placing spoof orders that was not tied to any evidence in the case and went beyond the definition of spoofing. *Id.* at 23:18-25:8. Additionally, immediately after testifying that Sarao pleaded guilty to engaging in spoofing, the case agent testified that a trader could use spoofing to cause price movements, quantity movements, and price adjustments. *Id*. at 21:24-22:11. In all, the case agent's testimony on the separate crime of market manipulation spans nearly five pages of the grand jury transcript.

To be clear, spoofing is not a "form of market manipulation." It requires no proof that prices rise or fall. Spoofing is described as a "disruptive trading practice" in the statute, and the opening statements and closing arguments in the only other spoofing trial did not mention the word

"manipulation," for good reason. It is a separate crime requiring a much higher standard of proof, which is why no one has ever been convicted of engaging in the crime of market manipulation.[3]

We took the government's assertions in its prior filing at face value, but as we reviewed the untimely-disclosed transcript this weekend to prepare to cross-examine the case agent, it was apparent that those assertions were inaccurate and misleading. Given that the government's references to market manipulation were not a "passing reference," but rather nearly five pages of testimony conflating spoofing with market manipulation, we file this motion to bring this issue to the Court's attention as soon as possible.

### III. The Government also Presented Legal Conclusions from a Fact Witness on the Ultimate Question the Grand Jury was Asked to Decide

In addition to providing extensive testimony to the grand jury about a crime Jitesh was not charged with, the case agent also presented legal conclusions under the guise of fact testimony to the grand jury on the ultimate question the grand jury was asked to decide: whether Jitesh conspired with Sarao. The case agent testified that:

> Q. So let's move to the allegations in this case. So based on the information that you have reviewed in the investigation, ***did the proposed defendant, Mr. Thakkar, did he conspire with Navinder Sarao to engage in spoofing*** in the E-mini market on the CME?
>
> A. ***Yes.***
>
> Q. And specifically trading E-mini futures contracts?
>
> A. Yes.
>
> Q. And approximately what time period ***did this conspiracy exist***?

[3] In fact, the CFTC recently lost a high-profile civil market manipulation case. In *United States Commodity Futures Trading Commission v. Wilson, et al.*, the court found that the CFTC failed to present sufficient evidence of the existence of an artificial price. *United States Commodity Futures Trading Comm'n v. Wilson*, No. 13 CIV. 7884 (RJS), 2018 WL 6322024, at *13 (S.D.N.Y. Nov. 30, 2018). In its ruling, the court noted that "[p]roving the existence of an artificial price *is difficult* – and with good reason. . . the laws that forbid market manipulation should not encroach on legitimate economic decisions lest they discourage the very activity that underlies the integrity of the markets they seek to protect." *Id.* at *15 (emphasis added) (internal citations and quotation marks omitted).

A. During the period of October 2011 to about April of 2015.

Q. And could you briefly summarize the --what's the purpose of that conspiracy?

A. The ***purpose of their conspiracy*** from Mr. Sarao's side was to obtain money through -- by placing trades he did not intend to execute and profit from those trades or enrich himself through those trades and Mr. Thakkar wanted to enrich himself by selling this software to Mr. Sarao and other traders.

Grand Jury Transcript, 26:5-27:2 (emphasis added).

## ARGUMENT

### I. Legal Standard

Federal Rule of Criminal Procedure 12(b)(3) allows a defendant to seek a pretrial dismissal based on "an error in the grand-jury proceeding." Fed. R. Crim. P. 12(b)(3)(A)(v); *see also United States v. Stelmachowski*, 2018 WL 828078, *6 (N.D. Ill. Feb. 12, 2018). The Court may dismiss an indictment where government misconduct before the grand jury "substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *United States v. Vincent*, 416 F.3d 593, 600 (7th Cir. 2005). In other words, the Court may dismiss the indictment if the government's misconduct during grand jury proceedings prejudiced the defendant. *Id.*

### II. The Grand Jury Witness Asserted Legal Conclusions on the Ultimate Issue that the Grand Jury was Asked to Decide

The Court should dismiss the indictment in this case because the government's case agent improperly testified before the grand jury on the ultimate issue that the grand jury was asked to decide. "[A]s a practical matter the modern grand jury is greatly dependent on the United States Attorney 'to present to it such evidence as it needs for its performance of its function and to furnish it with controlling legal principles.'" *United States v. Udziela*, 671 F.2d 995, 998 (7th Cir. 1982) (quoting *United States v. Ciambrone*, 601 F.2d 616, 622 (2d Cir. 1979)).

A federal prosecutor commits misconduct justifying dismissal of the indictment where "[t]he conduct of the district attorney before [the grand jury] was the equivalent of expressing the unqualified opinion that the evidence established the guilt of the defendants; that they ought to indict them." *United States v. Wells*, 163 F. 313, 332 (D. Idaho 1908). "The district attorney should not give advice or express his opinion as to the sufficiency of the evidence." *Id.* at 325. "[W]here the prosecutor not only expresses his opinion, but urges the finding of an indictment, and it is clearly shown that the grand jury must necessarily have been influenced, whether consciously or unconsciously, prejudice will be presumed." *Id.* at 327; *see also Udziela*, 671 F.2d at 998-99 ("federal courts in recent years have become more sensitive to allegations of governmental misconduct before the grand jury and have demonstrated greater willingness to curb prosecutorial abuse of such proceedings") (citing *Wells* and explaining the misconduct in *Wells* as "prosecutor expressed his opinion that defendants were guilty and that the grand jury should return an indictment against them"); *United States v. Ogden*, 703 F.2d 629, 636 (1st Cir. 1983) ("It is alleged that the prosecutor gave unsworn testimony to the grand jury and rendered his personal opinion and belief in the defendant's guilt. We recognize that abuse and perversion of the fact finding process of the grand jury by the prosecutor may necessitate a dismissal of an indictment.").

Here, the prosecutor called the case agent to tell the grand jury that Jitesh had conspired with Sarao to commit spoofing. Grand Jury Transcript, 26:5-27:2. In other words, the government's witness told the grand jury that Jitesh was guilty of conspiracy, which allowed the government to sidestep the difficult factual questions at issue here—factual questions that recently caused the government to seek an ostrich instruction because they lack confidence that they can prove that Jitesh actually knew what his supposed co-conspirator was doing.

The government's lack of confidence in its case is well-founded. It is difficult to prove that Jitesh and Sarao entered into a criminal conspiracy to engage in spoofing because there is no evidence that Jitesh and Sarao ever had an explicit discussion regarding spoofing or agreement to commit spoofing. But the grand jury never grappled with that tough question because the prosecutor improperly elicited conclusory testimony that the conspiracy existed, shortcutting the grand jury's need to consider that issue. The government's witness testified to the ultimate conclusion. Thus, it was impossible for the grand jury to have performed its proper function of addressing the difficult issues of fact in this case and deciding whether an indictment was proper.

We will never know for sure whether the grand jury would have had the same doubts that the government now has, but the questions of Jitesh's knowledge and agreement were never squarely presented to the grand jury. The grand jury never decided the tough question of Jitesh's lack of knowledge because the case agent asserted the conclusion that Jitesh had engaged in a conspiracy. Essentially, the government's witness told the grand jury that Jitesh should be indicted. Thus, there is "grave doubt" that the decision to indict was reached free of the improper influence of the case agent's conclusory testimony, and it was impossible for the grand jury to have performed its proper function of addressing the difficult issues of fact in this case and deciding whether an indictment was proper.

## III. **The Grand Jury was Led to Believe Jitesh Engaged in Market Manipulation, a Crime he was not Charged With**

The indictment should also be dismissed because the grand jury was led to believe Jitesh engaged in market manipulation, a separate crime for which he was not charged. Presenting misleading evidence that the defendant committed a different crime with which is not charged can be grounds for dismissing an indictment. For example, in *United States v. Asdrubal-Herrera*, 470 F. Supp. 939 (N.D. Ill. 1979), an INS agent presented an immigration case to the U.S. attorney,

who had the agent draft a complaint against the defendant. *Id.* at 940. The complaint incorrectly alleged that the defendant had also been involved in illegal firearms transactions. *Id.* at 940-41. The agent testified before the grand jury and related the same erroneous information regarding involvement in illegal firearms, a crime with which the defendant was not charged. *Id.* at 941. The court held that this testimony biased the grand jury, depriving the defendant of his right to an "independent and informed" grand jury. *Id.* at 942. It found that "[t]he jury was led to believe that the defendant was engaged in other illegal activity," and that this improper conduct justified dismissal of the indictment: "The grand jury places great trust in the United States Attorney. In this case they did not receive proper guidance. Their trust was misplaced. . . . Accordingly, the defendant's motion is granted, the indictment is dismissed." *Id. See also United States v. Hogan*, 712 F.2d 757, 760-62 (2d Cir. 1983) (dismissing indictment where the government presented testimony to the grand jury regarding crimes for which the defendant was not charged).

Market manipulation is a separate and distinct crime under the CEA. *See* 7 U.S.C. § 13(a)(2). Market manipulation requires the government to prove that the defendant had the ability to influence market prices, that artificial prices existed, and that the defendant caused the artificial prices. *In re Dairy Farmers of America, Inc. Cheese Antitrust Litigation*, 801 F.3d 758, 764-65 (7th Cir. 2015). Due to this high burden, the government has never obtained a criminal conviction for market manipulation. In contrast, spoofing requires no proof that the defendant influenced prices at all.

By providing extensive testimony regarding the separate crime of market manipulation to the grand jury, the government improperly prejudiced the grand jury against Jitesh. It led the grand jury to believe that Jitesh engaged in criminal activity besides spoofing, painting the misleading picture that Jitesh was guilty of more than just the crime charged. Further, conflating market

manipulation with spoofing gave the grand jury the impression that Jitesh had engaged in behavior that actually changed prices in the market, even though the government did not believe it had the evidence to charge Jitesh with such a crime. Such testimony biased the grand jury, depriving Jitesh of his right to an "independent and informed" grand jury. There is thus "grave doubt" that the grand jury returned an indictment free from improper influence.

## IV. <u>The Government Presented no Evidence to Support an Indictment on Counts II and III</u>

If this Court does not dismiss the entire indictment for the foregoing reasons, the Court should dismiss the substantive spoofing counts (Counts II and III) from the indictment because the government failed to present evidence to support an indictment on these counts. It is unclear whether the government alleges aiding and abetting or is pursuing a *Pinkerton* theory on Counts II and III. Under either theory, however, the government failed to present evidence to the grand jury that would support an indictment on these counts.

First, the evidence the government presented to the grand jury does not support an indictment on Counts II and III under an aiding and abetting theory because the government presented *absolutely no evidence* that Jitesh knew about the two *specific instances* of spoofing alleged in the indictment. "To be liable under an aiding and abetting theory for the crime itself, . . . a defendant must have had the specific intent to aid in the commission of the crime in doing whatever she did to facilitate its commission." *United States v. Nacotee*, 159 F.3d 1073, 1076 (7th Cir. 1998); *see also United States v. Irorere,* 228 F.3d 816, 825 (7th Cir. 2000) (aiding and abetting theory requires a showing of specific intent); *United States v. Barclay*, 560 F.2d 812, 816 (7th Cir. 1977). The government is required to prove that the defendant "shared the intent of the principal." *Barclay*, 560 F.2d at 815; *see also United States v. Bruun*, 809 F.2d 397, 411 (7th Cir. 1987) ("To

be liable as an aider and abettor, [the defendant] must have shared [the principal's] criminal intent.").

Because there is no allegation that Jitesh committed the underlying offense of spoofing, "the intent required is defined by the substantive offense and is to aid or abet its commission." *Barclay*, 560 F.2d at 816. Thus, "'(t)he defendant must act or fail to act with the specific intent to facilitate the commission of a crime by another.'" *Id.* (quoting *United States v. Bryant*, 461 F.2d 912, 920 (8th Cir. 1972)). Here, the underlying offense of spoofing is a specific intent crime. *United States v. Coscia*, 866 F.3d 782, 794 (7th Cir. 2017). Thus, to show that Jitesh had the specific intent to facilitate the commission of a crime by Sarao, the government would have to show that Jitesh had the specific intent to aid Sarao in cancelling the two trades of February 25, 2013 and March 8, 2013 that are alleged in the indictment.

Further, a defendant cannot be guilty for a specific substantive crime of which he was unaware and, therefore, had no intent to aid or abet. In *United States v. Greer*, the Seventh Circuit held that where the defendant had knowledge that the principals planned a theft but had no knowledge that the principals planned to transport the stolen goods across the state line, the defendant could not have the intent required for aiding and abetting the crime of transportation of stolen goods. *Greer*, 467 F.2d 1064, 1068-69 (7th Cir. 1972). The court explained "[W]here the relationship between the defendant's acts and the ultimate crime for which he is charged is as attenuated as it is in the instant case, we would require some showing of specific intent to aid in, or specific knowledge of, the crime charged." *Id.* at 1069.

The Supreme Court has made it clear that a defendant must have advanced knowledge of the exact crime the alleged principal intents to commit to be found guilty on a theory of aiding and abetting. In *Rosemond v. United States*, the defendant was convicted of violating a federal statute

that prohibits using or carrying a firearm during and in relation to any crime of violence or drug trafficking crime. *Rosemond*, 572 U.S. 65, 67 (2014). The jury was instructed on a theory of aiding and abetting. *Id.* at 68-69. The defendant appealed. *Id.* Addressing the intent requirement for aiding and abetting, the Supreme Court explained:

> a person aids and abets a crime when (in addition to taking the requisite act) he intends to facilitate that offense's commission. . . . An intent to advance some different or lesser offense is not, or at least not usually, sufficient: Instead, **the intent must go to the specific and entire crime charged**—so here, to the full scope (predicate crime plus gun use) of § 924(c).
>
> * * *
>
> We have previously found that intent requirement satisfied when a person actively participates in a criminal venture **with full knowledge of the circumstances constituting the charged offense.** In *Pereira,* the mail fraud case discussed above, we found the requisite intent for aiding and abetting because the defendant took part in a fraud "know[ing]" that his confederate would take care of the mailing. 347 U.S., at 12, 74 S.Ct. 358; see *supra,* at 1246 – 1247. Likewise, in *Bozza v. United States,* 330 U.S. 160, 165, 67 S.Ct. 645, 91 L.Ed. 818 (1947), we upheld a conviction for aiding and abetting the evasion of liquor taxes because the defendant helped operate a clandestine distillery "know[ing]" the business was set up "to violate Government revenue laws." And several Courts of Appeals have similarly held—addressing a fact pattern much like this one—that the unarmed driver of a getaway car had the requisite intent to aid and abet armed bank robbery if he "knew" that his confederates would use weapons in carrying out the crime. *See*, *e.g., United States v. Akiti,*701 F.3d 883, 887 (C.A.8 2012); *United States v. Easter,* 66 F.3d 1018, 1024 (C.A.9 1995). **So for purposes of aiding and abetting law, a person who actively participates in a criminal scheme knowing its extent and character intends that scheme's commission**.

*Id.* at 76-77 (emphasis added); *see also United States v. Cejas*, 761 F.3d 717, 729 (7th Cir. 2014). The court went on to hold that, for the defendant to be liable for aiding and abetting, the defendant's knowledge "must be advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice." 572 U.S. at 78. Thus, "[w]hat matters for purposes of gauging intent, and so what jury instructions should convey, is that the defendant has chosen, with full knowledge, to participate in the illegal scheme." *Id.* at 79. The court then vacated the

conviction and remanded the case because the trial court failed to instruct the jury on the requirement that the defendant have advanced knowledge of the specific crime the principals intended to commit—*i.e.*, a crime involving a gun. *Id.* at 82-83.

Here, the grand jury returned an indictment on two specific counts of spoofing that allegedly occurred on February 25, 2013 at 1:37:54.313 p.m. and March 8, 2013 at 9:52:23.983 a.m. Indictment, ECF Dkt. No. 17, ¶ 37. However, the government presented *absolutely no evidence* that Jitesh had "advanced knowledge" or "specific knowledge" that those two *specific trades* were going to take place or that he had the requisite specific intent to aid those two trades. The government presented no evidence that Jitesh intended "the specific and entire crime[s] charged" or that he acted "with full knowledge of the circumstances constituting the charges offense[s]" (*i.e.,* with knowledge of the trades Sarao made on February 25, 2013 and March 8, 2013). The only evidence the government presented to the grand jury about these two specific trades Sarao made was data and statistics relating to the trades and that Sarao placed the trades using NAVTrader. *See* Grand Jury Transcript, 70:19-76:20. Without any evidence of Jitesh's specific knowledge or intent, the grand jury's return of the indictment on these counts was improper. Counts II and III must be dismissed from the indictment.

Nor did the evidence the government presented to the grand jury support an indictment on Counts II and III under a *Pinkerton* theory of liability. Under *Pinkerton*, a conspirator may only be held liable for the a substantive offense committed by a co-conspirator if the co-conspirator's offense was committed in furtherance of the conspiracy, fell within the scope of the unlawful project, and was reasonably foreseeable as a necessary or natural consequence of the unlawful agreement. *United States v. Walls*, 225 F.3d 858, 865 (7th Cir. 2000) (citing *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946)). In this case, the government did not present evidence that

the specific spoof trades alleged in the indictment were reasonably foreseeable. *See* Grand Jury Transcript, 70:19-76:20. Accordingly, Counts II and III were not supported by sufficient evidence and these counts must be dismissed from the indictment.

## V. If the Indictment is not Dismissed in its Entirety, the Prejudicial Example of Market Manipulation Must be Stricken from the Indictment

If the Court disagrees and finds that the government's presentation to grand jury does not warrant dismissal of the indictment, the Court should strike the prejudicial an inflammatory "example" of market manipulation from the indictment.[4] Rule 7(d) of the Federal Rules of Criminal Procedure allows a court to "strike surplusage from the indictment" upon defendant's motion. Fed. R. Crim. P. 7(d). A motion to strike should be granted when "the targeted allegations are clearly not relevant to the charge and are inflammatory and prejudicial." *United States v. Groos*, 616 F. Supp. 2d 777, 789 (N.D. Ill. 2008) (quoting *U.S. v. Black*, 469 F. Supp. 2d 513, 518 (N.D. Ill. 2006)) (granting defendant's motion to strike under Rule 7(d)). "The purpose of (rule 7(d)) is to protect the defendant against prejudicial allegations of irrelevant or immaterial facts" because "[p]rosecutors have been known to insert unnecessary allegations for 'color' or 'background' hoping that these will stimulate the interest of the jurors." *United States v. Brighton Bldg. & Maint. Co.*, 435 F. Supp. 222, 230 (N.D. Ill. 1977). Further, allegations in an indictment that "may lead the jury to infer allegations of crimes beyond those actually charged" are improper and should be stricken from the indictment. *United States v. Beverly*, No. 87 CR 521, 1988 WL 48291, at *3 (N.D. Ill. May 11, 1988); *see also Brighton Bldg. & Maint. Co*., 435 F. Supp. at 230 (striking language from the indictment that "serves no useful purpose and allows the jury to draw the inference that the defendant is accused of crimes not charged in the indictment").

---

[4] Jitesh requests that the Court strike *all* of Paragraph 10 from the indictment, except for the first sentence. This includes striking subparagraphs 10(a)-10(f) from the indictment.

As discussed above, the allegations in the indictment related to the crime of "market manipulation" are just such irrelevant and prejudicial surplusage that could cause the jury to infer allegations of crimes beyond those Jitesh is actually charged with and must be stricken. This "example" of a crime Jitesh has not been charged with in Paragraph 10 is not relevant to the elements of the crimes the government *has* charged Jitesh with. *Groos*, 616 F. Supp. 2d at 790. Thus, if this Court does not dismiss the entirety of the indictment, the Court should strike all of paragraph 10 of the indictment except the first sentence, including striking subsections 10(a) through 10(f).

**CONCLUSION**

WHEREFORE, Defendant Jitesh Thakkar respectfully requests that this Court dismiss the indictment or, in the alternative, strike the prejudicial language in Paragraph 10 from the indictment, and grant such other and further relief as the Court deems proper.

Dated: March 31, 2019

Respectfully submitted,

By: */s/ Renato Mariotti*

Renato Mariotti
Holly H. Campbell
THOMPSON COBURN LLP
55 East Monroe St., 37th Floor
Chicago, Illinois 60603
(312) 346-7500
rmariotti@thompsoncoburn.com
hcampbell@thompsoncoburn.com

*Attorneys for Jitesh Thakkar*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2019, the foregoing was filed electronically with the Clerk of the Court to be served upon all attorneys of record by operation of the Court's electronic filing system.

/s/ Renato Mariotti