UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>JITESH THAKKAR,<br><br>        Defendant. | Case No. 18-CR-36<br><br>Judge Robert W. Gettleman |

**JITESH THAKKAR'S MOTION
FOR JUDGMENT OF ACQUITTAL**

Jitesh Thakkar hereby moves, pursuant to Rule 29(a), for a judgment of acquittal. In support thereof, Jitesh states as follows:

**INTRODUCTION**

As expected, the government was unable to establish that Jitesh had the requisite knowledge or mental state to support substantive spoofing charges against Jitesh. Spoofing is a specific intent crime that occurs at a particular time and date, like a bank robbery, and the spoofing counts in the indictment charge specific orders that were entered at specific days, hours, minutes, seconds, and milliseconds. It is undisputed that Jitesh did not know and could not possibly anticipate what particular trade Navinder Sarao would make at a specific moment in time. During its case-in-chief, the government presented no evidence to support the substantive spoofing counts under *either* an aiding and abetting theory or a *Pinkerton* theory. No reasonable juror could find that Jitesh knew that Navinder Sarao intended to commit the specific substantive spoofing offenses alleged in Counts II and III of the indictment. There is therefore insufficient evidence to sustain a conviction, and the Court should enter a judgment of acquittal on those counts.

Additionally, Sarao, the government's star witness, admitted at trial that there was no conspiracy, collusion, or criminal agreement between him and Jitesh. Because Sarao and Jitesh are the only co-conspirators alleged in the indictment, no reasonable jury could find the proof of an agreement to commit a crime required to support a conviction of conspiracy. Therefore, the Court should enter a judgment of acquittal on Count I as well.

## BACKGROUND

On February 14, 2018, the government filed a three-count indictment against Jitesh. *See* ECF Dkt. No. 17. The Indictment alleges that Navinder Sarao placed two specific trades that are alleged to be overt acts in a conspiracy. Those trades allegedly took place on or about February 25, 2013 and March 8, 2013. ECF Dkt. No. 17 at 13.

The Indictment charges Jitesh with conspiracy to commit spoofing, alleging that he conspired with Sarao. ECF Dkt. No. 17 at 5-13. The Indictment also charges Jitesh with two counts of the underlying substantive offense of spoofing. It alleges that Jitesh aided and abetted the two trades allegedly made by Sarao on February 25, 2013 and March 8, 2013. ECF Dkt. No. 17 at 13-14. The Indictment does not claim that Jitesh directly committed the underlying substantive offense of spoofing. It alleges only theories of aiding and abetting and conspiracy. ECF Dkt. No. 17.

At trial, the government offered Sarao as its witness regarding the alleged conspiracy and the two trades that occurred on February 25 and March 8, 2013. Sarao admitted that he has never met Jitesh in person.[1] Sarao Trial Tr. at 182:23-25. He admitted that all the decisions regarding the two trades that are the subject of the substantive spoofing counts were decisions that Sarao made on his own, without Jitesh. Sarao admitted that it was his choice whether to turn on the

---

[1] Sarao lives in England. *Id.* at 183:13-14. Jitesh lives in Chicago. *See id.* at 201:21-23.

optional checkbox feature for the "back-of-book" function on the trading software. *Id.* at 200:4-18. It was not Jitesh's choice. *Id.* at 200:19-20. In the videos of the trades alleged in the indictment, it was Sarao who appeared in the video. *Id.* at 200:24-201:1. It was Sarao controlling the mouse to make the trades. *Id.* at 201:5-7.

Jitesh does not appear in the trading videos offered into evidence by the government. *Id.* at 201:11-12. He was not in the room with Sarao. *Id.* at 201:13-14. He was not looking over Sarao's shoulder or whispering in his ear. *Id.* at 201:15-18. Jitesh was not in England at all. *Id.* at 201:19-20. As far as Sarao knew, Jitesh was thousands of miles away in Chicago. *Id.* at 201:21-23.

As Sarao acknowledged, "the world of high frequency trading requires people to make very quick decisions and [ ] a lot of trades occur in the span of microseconds and milliseconds." Sarao Trial Tr. at 201:24-202:2. The government's witness from the Chicago Mercantile Exchange, Timothy McCourt, gave similar testimony. McCourt Trial Tr. at 55:5-18 (explaining that high-frequency trading involves trading decisions that take place in "microseconds and milliseconds," or "[f]aster than the blink of an eye"). In the videos offered by the government, Sarao "made many split-second trading decisions." Sarao Trial Tr. at 202:4-7. He was constantly evaluating the market. *Id.* There is no evidence that Jitesh was involved in any of those decisions.

Sarao also admitted that the software program designed by Edge Financial did not make trading decisions for Sarao. *Id.* at 202:8-10. Sarao decided when to place orders. *Id.* at 202:11-12. Sarao decided at what price to place orders. *Id.* at 202:13-14. Sarao decided what quantity of orders to place. *Id.* at 202:18-23. Sarao decided when to cancel orders. *Id.* at 202:24-25. Sarao made clear that he did all of his trading from London, England. *Id.* at 244:10-11. Sarao testified that Jitesh was not present and was not making any decisions when Sarao made split-second

trading decisions. *Id*. at 244:12-16. He did not call Jitesh to discuss the orders he was about to place. *Id.* at 203:1-3. He did not call Jitesh to discuss the orders he was about to cancel. *Id.* at 203:4-6.

Further, the program created by Edge Financial gave Sarao many optional features. *Id.* at 203:11-13. For example, the back-of-the-book checkbox was optional. *Id.* at 203:14-16. It was not turned on unless Sarao checked it. *Id.* at 203:17-19. Sarao decided when he wanted to use the back-of-the-book function. *Id.* at 207:17-19. He decided when to place or cancel an order. *Id.* at 207:20-22. Those were Sarao's decisions. *Id.* at 207:23-24. Sarao admitted that they were his crimes. *Id.* at 207:25-208:1.

Sarao also admitted that he never used the word "spoofing" with Jitesh and was "careful" about how he spoke with him. *Id.* at 185:8-15. *See also id.* at 187:2-6. He was not even "100 percent sure" that Jitesh knew that Sarao engaged in spoofing at all, *id.* at 185:16-187:1, much less that Sarao was going to commit the specific acts of spoofing at specific moments in time on February 25, 2013 and March 8, 2013 that are alleged in Counts II and III.

Further, Sarao, the only person alleged to have conspired with Jitesh, admitted that Jitesh never told Sarao that he "agreed to spoof the market" with Sarao. *Id.* at 187:7-9. He never told Sarao that he "agreed to be part of a scheme to spoof the market." *Id.* at 187:10-12. *See also id.* at 188:4-7 (Q. Right. And you never discussed, just to be clear, you and [Jitesh] never, in his conversations with you, agreed to be part of a scheme to spoof the market; did he? Did he say that to you? A. He didn't say that, no."). In fact, Sarao testified that "he did not think Jitesh was involved in committing a crime." *Id*. at 267:23-25. Sarao also said that "he did not consider that he was colluding to commit crimes" with Jitesh. *Id*. at 266:18-21.

Sarao's admissions are all the more important because he was the government's main fact witness. He entered into a plea deal with the government where he agreed to testify when called upon. *Id.* at 212:3-16. In exchange for testifying for the government, Sarao hopes to receive a reduced sentence for his crimes. *Id.* at 213:10-214:2, 215:7-10. If the government does not like Sarao's testimony, it could decline to recommend a reduced sentence, and Sarao could face up to 30 years in prison. *Id.* at 211:12-24, 217:1-24. Thus, Sarao had no incentive to shade his testimony to aid Jitesh.

## ARGUMENT

### I. Legal Standard

Federal Rule of Criminal Procedure 29(a) provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." As the Seventh Circuit recently explained, the Court should treat a Rule 29 motion similarly to a motion for summary judgment or for directed verdict in a civil case and ask "whether a reasonable jury could find guilt beyond a reasonable doubt":

> **The Supreme Court has taught that, in applying Rule 29 and the reasonable-doubt standard in criminal cases, it is useful to compare the similar role that judges play in deciding motions for summary judgment and for judgment as a matter of law in civil cases, under Federal Rules of Civil Procedure 56 and 50.** In *Jackson*, the Court explained that "the beyond-a-reasonable-doubt standard" requires a "quantum and quality of proof" that permits a judge to "distinguish between criminal and civil cases for the purpose of ruling on a motion for judgment of acquittal." *Id.* at 318 n.11, 99 S.Ct. 2781. Similarly, in one of the iconic cases on summary judgment in civil cases, the Court returned to *Jackson*'s focus on "the actual quantum and quality of proof necessary to support liability," advising that a case should not go to a jury "if the evidence presented ... is of insufficient caliber or quantity to allow a rational finder of fact to find" liability under the applicable standard of proof. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> *Anderson* explained that **when a judge considers a motion for summary judgment, a directed verdict under Federal Rule of Civil Procedure 50(a), or a "First Amendment [case that] mandates a 'clear and convincing' standard,"  it is, "[i]n terms of the nature of the inquiry, ... no different from the consideration of a motion for acquittal in a criminal case, where the beyond-a-reasonable-doubt standard applies and where the trial judge asks whether a reasonable jury could find guilt beyond a reasonable doubt."** *Id.* at 250–52, 106 S.Ct. 2505, citing *Jackson*, 443 U.S. at 318–19, 99 S.Ct. 2781. In all of these contexts, the judge must consider "the substantive evidentiary standard of proof that would apply at the trial on the merits." *Id.* at 252, 106 S.Ct. 2505; see also *Ford v. Ahitow*, 104 F.3d 926, 938 (7th Cir. 1997) (*Jackson* inquiry is "no different from the consideration of the trial judge's inquiry in a motion for summary judgment or for a directed verdict," namely a "judge asks whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented").
>
> The judge must ensure in both civil and criminal cases that determinations of credibility and the choices among reasonable inferences from the evidence are left to the jury. **But in all of these contexts, the judge is still responsible for enforcing outer limits on reasonable inferences, guided by the relevant standard of proof.** *Anderson*, 477 U.S. at 254–55, 106 S.Ct. 2505; see also, e.g., *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 595, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (affirming summary judgment in civil antitrust suit where "speculative or ambiguous" evidence did not support triable issue under preponderance-of-evidence standard); *Willis v. Marion County Auditor's Office*, 118 F.3d 542, 544–45 (7th Cir. 1997) (affirming district court's grant of judgment as matter of law; insufficient evidence to support jury verdict that defendants harbored any racial animus or had fired plaintiff to retaliate for her claim of employment discrimination). **A judge facing a Rule 29 motion in a criminal case might benefit from first asking whether, if the evidence had been presented in a civil case, it would be sufficient to send the case to the jury.**

*United States v. Garcia*, – F.3d – , 2019 WL 1275330, *7 (7th Cir. Mar. 20, 2019). The Court should rely on its "wealth of experience in applying the varying standards of proof to gauge the sufficiency of the government's evidence." *Id.* at *13. As the Seventh Circuit has advised, "When faced with a close criminal case, the judge's experience with parallel issues in civil cases may prove helpful in deciding the boundaries of permissible inferences when the government must prove its case beyond a reasonable doubt—which is so much more stringent than the civil standard of proof." *Id.*

- 6 -

II. **The Government Presented no Evidence to Support a Conviction on Counts II and III**

Here, the Court should enter a judgment of acquittal on the substantive spoofing counts (Counts II and III) because the government failed to present evidence to support a conviction on these counts beyond a reasonable doubt. It is unclear whether the government alleges aiding and abetting or is pursuing a *Pinkerton* theory on Counts II and III. Under either theory, however, the government failed to present evidence that would support a conviction.

First, the evidence the government presented to the jury does not support a conviction on Counts II and III under an aiding and abetting theory because the government presented *absolutely no evidence* that Jitesh knew about the two *specific instances* of spoofing alleged in the indictment. "To be liable under an aiding and abetting theory for the crime itself, . . . a defendant must have had the specific intent to aid in the commission of the crime in doing whatever she did to facilitate its commission." *United States v. Nacotee*, 159 F.3d 1073, 1076 (7th Cir. 1998); *see also United States v. Irorere,* 228 F.3d 816, 825 (7th Cir. 2000) (aiding and abetting theory requires a showing of specific intent); *United States v. Barclay*, 560 F.2d 812, 816 (7th Cir. 1977). The government is required to prove that the defendant "shared the intent of the principal." *Barclay*, 560 F.2d at 815; *see also United States v. Bruun*, 809 F.2d 397, 411 (7th Cir. 1987) ("To be liable as an aider and abettor, [the defendant] must have shared [the principal's] criminal intent.").

Because there is no allegation that Jitesh committed the underlying offense of spoofing, "the intent required is defined by the substantive offense and is to aid or abet its commission." *Barclay*, 560 F.2d at 816. Thus, "'(t)he defendant must act or fail to act with the specific intent to facilitate the commission of a crime by another.'" *Id.* (quoting *United States v. Bryant*, 461 F.2d 912, 920 (8th Cir. 1972)). Here, the underlying offense of spoofing is a specific intent crime. *United States v. Coscia*, 866 F.3d 782, 794 (7th Cir. 2017). Thus, to show that Jitesh had the

- 7 -

specific intent to facilitate the commission of a crime by Sarao, the government would have to show that Jitesh had the specific intent to aid Sarao in cancelling the two trades of February 25, 2013 and March 8, 2013 that are alleged in the indictment.

Further, a defendant cannot be guilty for a specific substantive crime of which he was unaware and, therefore, had no intent to aid or abet. In *United States v. Greer*, the Seventh Circuit held that where the defendant had knowledge that the principals planned a theft but had no knowledge that the principals planned to transport the stolen goods across the state line, the defendant could not have the intent required for aiding and abetting the crime of transportation of stolen goods. *Greer*, 467 F.2d 1064, 1068-69 (7th Cir. 1972). The court explained "[W]here the relationship between the defendant's acts and the ultimate crime for which he is charged is as attenuated as it is in the instant case, we would require some showing of specific intent to aid in, or specific knowledge of, the crime charged." *Id.* at 1069.

The Supreme Court has made it clear that a defendant must have advanced knowledge of the exact crime the alleged principal intents to commit to be found guilty on a theory of aiding and abetting. In *Rosemond v. United States*, the defendant was convicted of violating a federal statute that prohibits using or carrying a firearm during and in relation to any crime of violence or drug trafficking crime. *Rosemond*, 572 U.S. 65, 67 (2014). The jury was instructed on a theory of aiding and abetting. *Id.* at 68-69. The defendant appealed. *Id.* Addressing the intent requirement for aiding and abetting, the Supreme Court explained:

> a person aids and abets a crime when (in addition to taking the requisite act) he intends to facilitate that offense's commission. . . . An intent to advance some different or lesser offense is not, or at least not usually, sufficient: Instead, **the intent must go to the specific and entire crime charged**—so here, to the full scope (predicate crime plus gun use) of § 924(c).

\* \* \*

> We have previously found that intent requirement satisfied when a person actively participates in a criminal venture **with full knowledge of the circumstances constituting the charged offense.** In *Pereira,* the mail fraud case discussed above, we found the requisite intent for aiding and abetting because the defendant took part in a fraud "know[ing]" that his confederate would take care of the mailing. 347 U.S., at 12, 74 S.Ct. 358; see *supra,* at 1246 – 1247. Likewise, in *Bozza v. United States,* 330 U.S. 160, 165, 67 S.Ct. 645, 91 L.Ed. 818 (1947), we upheld a conviction for aiding and abetting the evasion of liquor taxes because the defendant helped operate a clandestine distillery "know[ing]" the business was set up "to violate Government revenue laws." And several Courts of Appeals have similarly held—addressing a fact pattern much like this one—that the unarmed driver of a getaway car had the requisite intent to aid and abet armed bank robbery if he "knew" that his confederates would use weapons in carrying out the crime. *See, e.g., United States v. Akiti,* 701 F.3d 883, 887 (C.A.8 2012); *United States v. Easter,* 66 F.3d 1018, 1024 (C.A.9 1995). **So for purposes of aiding and abetting law, a person who actively participates in a criminal scheme knowing its extent and character intends that scheme's commission**.

*Id.* at 76-77 (emphasis added); *see also United States v. Cejas*, 761 F.3d 717, 729 (7th Cir. 2014). The court went on to hold that, for the defendant to be liable for aiding and abetting, the defendant's knowledge "must be advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice." 572 U.S. at 78. Thus, "[w]hat matters for purposes of gauging intent, and so what jury instructions should convey, is that the defendant has chosen, with full knowledge, to participate in the illegal scheme." *Id.* at 79. The court then vacated the conviction and remanded the case because the trial court failed to instruct the jury on the requirement that the defendant have advanced knowledge of the specific crime the principals intended to commit—*i.e.*, a crime involving a gun. *Id.* at 82-83.

Here, the government has charged Jitesh with two specific counts of spoofing that allegedly occurred on February 25, 2013 at 1:37:54.313 p.m. and March 8, 2013 at 9:52:23.983 a.m. Indictment, ECF Dkt. No. 17, ¶ 37. However, the government presented *absolutely no evidence* that Jitesh had "advanced knowledge" or "specific knowledge" that those two *specific orders* were going to be placed or that he had the requisite specific intent to aid the placement of those two

specific spoof orders. The government presented no evidence that Jitesh intended "the specific and entire crime[s] charged" or that he acted "with full knowledge of the circumstances constituting the charges offense[s]" (*i.e.,* with knowledge of the trades Sarao made on February 25, 2013 and March 8, 2013). The only evidence the government presented to the jury about these two specific trades Sarao made were data about the trades drawn from CME's RAPID and ARMADA databases, as well as summary charts summarizing the RAPID and ARMADA data. As discussed above, Sarao testified in great detail that all the decisions related to those two specific trades were his alone. Without any evidence of Jitesh's specific knowledge or intent, the evidence is insufficient to sustain a conviction. The Court should therefore enter a judgment of acquittal on Counts II and III.

Nor did the evidence the government presented to the jury support an indictment on Counts II and III under a *Pinkerton* theory of liability. Under *Pinkerton*, a conspirator may only be held liable for the a substantive offense committed by a co-conspirator if the co-conspirator's offense was committed in furtherance of the conspiracy, fell within the scope of the unlawful project, and was reasonably foreseeable as a necessary or natural consequence of the unlawful agreement. *United States v. Walls*, 225 F.3d 858, 865 (7th Cir. 2000) (citing *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946)). In this case, the government did not present evidence that the two specific spoof trades alleged in the indictment were reasonably foreseeable. Further, for the reasons discussed further in Section III, *infra*, the government failed to offer sufficient evidence to even support the existence of a conspiracy. Accordingly, Counts II and III were not supported by sufficient evidence, and the Court should enter a judgment of acquittal on those counts.

### III. There Is Insufficient Evidence to Sustain a Conviction on Count I Because the Only Alleged Co-Conspirator Admitted There Was No Conspiracy

The Court should also enter judgment of acquittal on Count I, as the only alleged co-conspirator and the government's main witness admitted on the stand that there was no conspiracy between him and Jitesh. "A conspiracy is an express or implied agreement between two or more persons to commit a crime." Fed. Crim. Jury Instr. 7th Cir. 5.09 (2012 ed.). As the Seventh Circuit has explained, "A conspiracy is a knowing and intentional agreement between two or more people to fulfill a particular criminal objective." *United States v. King*, 627 F.3d 641, 651 (7th Cir. 2010) (internal quotation marks and citation omitted). Thus, "[c]onspiracy has two elements: (1) an agreement to commit an unlawful act; and (2) the defendant must have knowingly and intentionally joined that agreement." *United States v. Cruse*, 805 F.3d 795, 811 (7th Cir. 2015). Further, while the government may rely on circumstantial evidence, "the Supreme Court has warned that '[i]n some cases reliance on [circumstantial] evidence perhaps has tended to obscure the basic fact that the *agreement* is the essential evil at which the crime of conspiracy is directed.'" *Id.* (quoting *Iannelli v. United States*, 420 U.S. 770, 777 n.10 (1975)).

Here, the government has alleged a two-person conspiracy between Jitesh and Sarao. Jitesh, in his interviews with FBI agents that were admitted into evidence, denied that he ever agreed with Sarao to commit spoofing. Sarao was the government's witness, testifying pursuant to a plea deal under which he promised to cooperate with the government in exchange for a recommendation for a reduced sentence. Sarao likewise denied that he ever entered into a conspiracy with Jitesh, and he denied that there was any agreement with Jitesh to commit spoofing.

With both members of the alleged conspiracy denying any agreement between them, including the government's star witness, and with no other evidence of an agreement between the alleged co-conspirators to commit the acts of spoofing alleged in Counts II and III, no reasonable

jury could convict Jitesh on Count I. "[G]ut feelings and suspicions do not relieve the government of the burden of offering sufficient evidence to prove guilty beyond a reasonable doubt. . . . [A] judge must take special care to guard against the possibility that a defendant might be found guilty by either speculation or mere association." *Garcia*, 2019 WL 1275330, at *9, 12.

Here, the government has offered no more than a "gut feeling" that Jitesh conspired with Sarao—a theory that both Jitesh and Sarao contradicted. Sarao's "gut feeling" that Jitesh was smart enough to figure out what he was doing could not be relied upon by any rational juror, given that he has a condition that "impacts the way he perceives other people" and "the way he perceives other people's communications with him." Sarao Transcript 245:5-9. Regardless of how one views Sarao's speculation that Jitesh could "figure out" what he was doing, Sarao's admission that there was no criminal agreement between him and Jitesh alone indicates that the Court should enter a judgment of acquittal on Count I.

## CONCLUSION

WHEREFORE, Defendant Jitesh Thakkar respectfully requests that this Court enter a judgment of acquittal on all counts, and grant such other and further relief as the Court deems proper.

Dated: April 3, 2019

Respectfully submitted,

By: /s/ *Renato Mariotti*
Renato Mariotti
Holly H. Campbell
THOMPSON COBURN LLP
55 East Monroe St., 37th Floor
Chicago, Illinois 60603
(312) 346-7500
rmariotti@thompsoncoburn.com
hcampbell@thompsoncoburn.com

*Attorneys for Jitesh Thakkar*

## CERTIFICATE OF SERVICE

      I hereby certify that on April 3, 2019, the foregoing was filed electronically with the Clerk of the Court to be served upon all attorneys of record by operation of the Court's electronic filing system.

                                        /s/ Renato Mariotti